UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12119-RWZ

MASSACHUSETTS FISCAL ALLIANCE

v.

MICHAEL SULLIVAN, et al.

MEMORANDUM OF DECISION AND ORDER

November 6, 2018

ZOBEL, S.D.J.

Plaintiff Massachusetts Fiscal Alliance challenges the constitutionality of certain Massachusetts campaign finance laws.[1] Now before me is plaintiff's motion for a temporary restraining order and preliminary injunction, Docket # 8, which seeks to enjoin enforcement of Mass. Gen. Laws ch. 55, § 18G's "statement of responsibility," "top five contributors," and "OCPF website" requirements as applied to plaintiff's proposed election-related communications.[2]

I.  **Factual Background**

Plaintiff is a "nonpartisan, nonprofit corporation organized under 26 U.S.C. § 501(c)(4)" which "advocates for fiscal responsibility on the part of the Massachusetts

---

[1] The named defendants—collectively, "the Commonwealth"—are Michael J. Sullivan (as Director of Massachusetts' Office of Campaign and Political Finance ("OCPF")), Maura Healey (as Massachusetts' Attorney General), and John P. Pappas (as Suffolk County's district attorney).

[2] Because each party employs different tags to describe the three challenged provisions, the court uses these shorthand references—"statement of responsibility," "top five contributors," and "OCPF website"—instead.

state government, for transparency and accountability, and for increased economic opportunity for all people of the Commonwealth." See Docket # 1 at ¶ 12. [3]

As part of its mission to "educat[e] the people of the Commonwealth about the activities of their state government," plaintiff seeks to air television, radio, and internet advertisements and disseminate direct mail in advance of the November 6, 2018 elections. See id. ¶¶ 23, 28-37. Since, inter alia, these communications will name a candidate and be disseminated within the 90-day period preceding the election, plaintiff concedes that they constitute "electioneering communications" subject to the requirements of Mass. Gen. Laws ch. 55, § 18G. See Mass. Gen. Laws ch. 55, § 1. Rather than comply with the provisions therein, plaintiff alleges that it will choose to remain silent absent an injunction by this court.[4]

### A. Challenged Aspects of Ch. 55, § 18G

Plaintiff's claims concern three aspects of Section 18G. As noted above, the law only applies to a narrow category of communications: those which (1) name a candidate seeking election; and (2) are publicly distributed in the 90-day window preceding an election. See Mass. Gen. Laws ch. 55, § 18G. When both of these conditions are met, as would be the case with the advertisements at issue in this case, Section 18G imposes the three requirements that plaintiff challenges.

First, the law requires that a "statement of responsibility" accompany radio,

---

[3] Federal law allows the donors to 501(c)(4) corporations to remain secret. See, e.g., 26 U.S.C. § 6104(d)(3)(A) (protecting "the disclosure of the name or address of any contributor to the organization").

[4] Violations of Section 18G "shall be punished by imprisonment in the house of correction for not more than 1 year or by a fine of not more than $10,000, or both." Mass. Gen. Laws ch. 55, § 18G.

2

television, and internet advertisements. For both radio and television, "the chairman or principal officer of the group or association" must state "I am _____ (name) the _____ (office held) of _____ (name of corporation, group, association or labor union) and _____ (name of corporation, group, association or labor union) approves and paid for this message." Id. In television advertisements, the statement must "be conveyed by an unobscured, full-scene view of the person making the statement." Id. For internet advertisements, the statement must "appear in a clearly readable manner with a reasonable degree of color contrast between the background and the printed statement." Id.[5]

Second, the law requires that television, internet, and certain print advertising, direct mail, and billboards "include a written statement at the bottom of the advertisement or mailing that contains the words 'Top Contributors' and a written statement that lists the 5 persons or entities or, if fewer than 5 persons or entities, all such persons or entities, that made the largest contributions to that entity, regardless of the purpose for which the funds were given." Id. This requirement only applies to "contributions in excess of $5,000 reportable under [Mass. Gen. Laws ch. 55] during the 12-month period before the date of the advertisement or communication ...." Id.

Third, and finally, the law mandates that non-radio ads must "include a written statement ... that directs viewers to the official web address of the office of campaign and political finance." Id.; see 970 C.M.R. § 2.20(7) (specifying text: "for more information regarding contributors, go to www.ocpf.us.").

---

[5] Plaintiff alleges that inclusion of this statement in its proposed television and radio communications will add $667 and $56, respectively, to the cost of each advertisement. Docket # 1 at ¶ 75.

## II. Legal Principles

When considering a motion for a preliminary injunction and/or temporary restraining order, the court weighs four factors: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing the injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." Sindicato Puertorriqueno de Trabajadores v. Fortuno, 699 F.3d 1, 10 (1st Cir. 2012) (quoting Jean v. Massachusetts State Police, 492 F.3d 24, 26-27 (1st Cir. 2007)). "Likelihood of success is the main bearing wall of the four-factor framework," Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996), especially in the First Amendment context. See Sindicato, 699 F.3d at 10.

## III. Application

### A. Likelihood of Success on the Merits

#### 1. Standard of Judicial Scrutiny

At the outset, I am persuaded that all the challenged provisions are subject to "exacting scrutiny." See Citizens United v. FEC, 558 U.S. 310, 366-67 (2010). Under that standard, a court will sustain the constitutionality of a law that bears a "substantial relation" to a "sufficiently important" governmental interest. Id. Exacting scrutiny does not require the government to select the least restrictive means of achieving its goal. See Del. Strong Families v. Attorney Gen. of Del., 793 F.3d 304, 309 n.4 (3d Cir. 2015).

Plaintiff's argument for strict scrutiny, the higher criterion of judicial review, is unavailing. The challenged laws are not substantially different from the disclaimer and

4

disclosure regimes ordinarily subjected to exacting scrutiny.  See Citizens United, 558 U.S. at 368; Nat'l Org. for Marriage v. McKee ("NOM"), 649 F.3d 34, 61 (1st Cir. 2011).  Most crucially, the laws in issue "neither erect a barrier to political speech nor limit its quantity."  Cf. NOM, 649 F.3d at 41.  As a "less restrictive alternative to more comprehensive regulations of speech," campaign finance disclosure laws like Section 18G are therefore properly subject to exacting—not strict—scrutiny.  Citizens United, 558 U.S. at 368.

### 2. The Commonwealth's Interest

The Commonwealth asserts that Section 18G's scheme provides "the electorate with information about election-related spending sources," including "insur[ing] that the voters are fully informed about who is speaking" and "avoiding confusion by making clear that the ads are not funded by a candidate or political party."  Docket # 17 at 15 (quoting Citizens United, 558 U.S. at 368).  This is a "sufficiently important" governmental interest.  See Citizens United, 558 U.S. at 368; Buckley v. Valeo, 424 U.S. 1, 66 (1976); NOM, 649 F.3d at 57; Vermont Right to Life Comm., Inc. v. Sorrell, 758 F.3d 118, 133 (2d Cir. 2014) ("A governmental interest in providing the electorate with information about the sources of election-related spending may justify disclosure requirements" under exacting scrutiny) (internal quotation marks omitted).

### 3. The "Statement of Responsibility" Requirement

As to the first challenged provision, Section 18G's "statement of responsibility" mandate is substantially related to the Commonwealth's important interest in a fully informed electorate.  Indeed, the constitutionality of similar disclosure provisions has been upheld on multiple occasions, including by the Supreme Court.  See Citizens

5

United, 558 U.S. at 368; McConnell v. FEC, 540 U.S. 93, 231 (2003); Worley v. Fla. Sec'y of State, 717 F.3d 1238, 1255 (11th Cir. 2013); NOM, 649 F.3d at 61. The specific requirement that plaintiff's chairman deliver the message on screen in television ads is properly understood as a permissible incremental adjustment to the very same disclosure requirement upheld in Citizens United. See 558 U.S. at 368; see also Committee to Elect Dan Forest v. EMPAC, 817 S.E.2d 738, 740 (N.C. App. Ct. 2018) (upholding constitutionality of in-person statement of responsibility requirement as "similar to and not any more onerous than the statute sustained" in Citizens United). And although plaintiff argues that the mandated script of the disclosure is too burdensome, the requirement upheld in Citizens United also required use of language drafted by the legislature. See Citizens United, 558 U.S. at 366, 368. Plaintiff is unlikely to disprove that Section 18G's "statement of responsibility" requirement is sufficiently tied to the Commonwealth's interest in informing the electorate about the source of funds and identity of the messenger.

### 4. The "Top Five Contributors" Requirement

The second provision at issue, which requires disclosure of certain of plaintiff's "top" donors on certain messages, is also likely to withstand plaintiff's constitutional challenge. "In an age characterized by the rapid multiplication of media outlets and the rise of internet reporting, the 'marketplace of ideas,' has become flooded with a profusion of information and political messages. Citizens rely ever more on a message's source as a proxy for reliability and a barometer of political spin." NOM, 649 F.3d at 57. After-the-fact donor disclosure requirements have been routinely upheld

6

against First Amendment challenges as substantially related to addressing this reality. See, e.g., Citizens United, 558 U.S. at 366-69; McConnell, 540 U.S. at 196; Del. Strong Families, 793 F.3d at 313; Ctr. for Individual Freedom, Inc. v. Tennant, 706 F.3d 270, 292 (4th Cir. 2013); NOM, 649 F.3d at 57. Section 18G's "top five contributor" requirement reflects the Commonwealth's permissible determination that on-message disclosure of the source of money behind the speaker is also an effective means for achieving voter understanding and knowledge. Cf. NOM, 649 F.3d at 57. That is especially true given the limited nature of the requirement (it only applies to large contributors of over $5,000, and, as with all of Section 18G, is triggered just for the narrow universe of "electioneering communications"), see Mass. Gen. Laws. ch. 55, § 18G. It is also relevant that Massachusetts' after-the-fact disclosure provisions do not apply to groups that, like plaintiff, do not solicit earmarked donations. See Mass. Gen. Laws. ch. 55, § 18F (requiring donor disclosure only where organization "receives funds to make electioneering communications").

Finally, plaintiff is unlikely to succeed in challenging this provision as a threat to its donors' associational or privacy rights because it has not even alleged that these individuals or groups fear "threats, harassment, or reprisals" in the event of disclosure. See Citizens United, 558 U.S. at 367 (noting as-applied challenges to donor disclosure requirements depend upon showing a "reasonable probability that disclosure of ... contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties.") (internal quotation marks omitted).

### 5. The "OCPF Website" Requirement

Plaintiff lastly complains that Section 18G's "OCPF Website" provision impinges upon the First Amendment. However, requiring electioneering communications to reference OCPF's website is closely tied to the Commonwealth's important interest in informing voters about the sources of funding for election-related advertising. That satisfies the court's exacting scrutiny analysis. Contrary to plaintiff's argument, National Inst. of Family and Life Advocates v. Becerra does not command a different result, given the content-neutral nature of the website requirement in this case and the minimal burden placed on plaintiff's speech. See 138 S.Ct. 2361, 2379 (2018) (Kennedy, J., concurring) (invalidating state law "requir[ing] primarily pro-life pregnancy centers to promote the State's own preferred message advertising abortions").

### 6. The Vagueness Challenge

In addition to the three challenges discussed above, plaintiff also asserts that two aspects of Section 18G are facially, and thus, unconstitutionally, vague. This claim is unlikely to succeed. Section 18G requires that the text of disclosures in television and internet ads feature a "reasonable degree of color contrast," Mass. Gen Laws, ch. 55, § 18G, which is "legible to the average viewer." 970 C.M.R. § 2.20(6)(a). Beyond asserting that the "language is vague" and that it is "truly impossible to know how to comply with the law" for internet advertisements, Docket # 8-1 at 27, plaintiff fails to point to "a substantial risk that application of the provision will lead to the suppression of speech." Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998) (noting that because facial invalidation is "strong medicine," the movant confronts a "heavy

burden"). In view of the straightforward nature of the challenged language, the court fails to discern any vagueness infirmity.

### B. Non-Merits Factors

The remaining factors disfavor granting a temporary restraining order or preliminary injunction. Given the court's determination that plaintiff is unlikely to show a violation of First Amendment rights, the remaining factors cannot rescue plaintiff's quest. Irreparable harm is absent, and the balance of the harms and public interest factors favor denying the requested relief for the same reasons. It is also worth noting that plaintiff filed this action only twenty-seven days before the November 6, 2018 election and more than two-thirds into the statutory period of application for the requirements of which it complains. Cf. Respect Maine PAC v. McKee, 622 F.3d 13, 16 (1st Cir. 2010) (recognizing "the harm to the public interest from the chaos that will ensue if the [challenged laws] are invalidated by a court order in the crucial final weeks before an election").

## IV. Conclusion

Plaintiff's motion for a temporary restraining order and preliminary injunction (Docket # 8) is denied.

   November 6, 2018        /s/Rya W. Zobel   
       DATE                                     RYA W. ZOBEL
                                                   SENIOR UNITED STATES DISTRICT JUDGE